326 So.2d 562 (1976)
Delores, wife of/and John BRUNO, Jr.
v.
Dr. Thomas E. CLEMENTS and XYZ Insurance Company.
No. 7256.
Court of Appeal of Louisiana, Fourth Circuit.
February 10, 1976.
Michael D. Cucullu, New Orleans, for plaintiffs-appellants.
Richard S. McBride, Jr. and Ronald F. Fontano, New Orleans, for defendants-appellees.
Before SAMUEL, STOULIG and BOUTALL, JJ.
BOUTALL, Judge.
This suit involves the issue of medical malpractice on the part of Dr. Thomas E. Clements, defendant. Plaintiffs' suit was dismissed and they have appealed. We affirm.
The plaintiffs contend that Mrs. Bruno was suffering from the onset of acute appendicitis when she visited Dr. Clements' office on June 15, 1971. Dr. Clements examined her, diagnosed her problem as gastritis and prescribed certain appropriate medicines. Later that same night Mrs. Bruno became very ill and was taken to the hospital. At the hospital her ailment was diagnosed as a possible acute abdomen, and surgery the following day proved that her appendix had ruptured. It is asserted that a proper diagnosis would have prevented the severe complications which may be expected once an appendix ruptures and which she suffered. As a result Mrs. Bruno underwent several more operations plus an extended hospital stay before she recovered.
Plaintiffs raise two issues as to the negligence of Dr. Clements. First, he performed an improper examination on the plaintiff. Secondly, assuming his examination was proper, he failed to diagnose appendicitis or acute abdomen when he should have.

*563 I. THE EXAMINATION
Mrs. Bruno testified she had a vague pain in her stomach around the navel and decided to visit Dr. Clements. After waiting several hours in his office she was led to an examination room and left there alone. Dr. Clements came into the room alone and asked her her complaint. When she told him she had a pain in the stomach he pressed on her abdomen while she was seated and fully clothed. All state that the only proper type of examination of a patient with stomach pains is to place them in a supine position and palpate on the bare abdomen.
As opposed to this is the testimony of Dr. Clements and his assistants. None remember Mrs. Bruno directly. However, her name is listed on their records and thus they do recall her visit through these documents. Dr. Clements testified that he never examines any patient suffering from stomach pains without putting them on the examining table and having them disrobe. He also never examines a disrobed female patient without one of his female assistants present in the room. The doctor admits that he examined Mrs. Bruno and that he prescribed all the medicines she says he did. He denied that he gave her a shot of anything because his records do not show that he did. He further stated that he told her, as he does all his patients, to return or call him if the medicine was not effective or her condition worsened. His nurse and his receptionist assistant corroborate him.
As shown, Mrs. Bruno's and Dr. Clements' testimony as to the examination procedure he used differ greatly. The issue becomes one of credibility. Obviously, the trial court believed Dr. Clements and his witnesses, and the record supports that conclusion.

II. THE DIAGNOSIS
The next question causes slightly more difficulty. Did Dr. Clements fall below the prevailing community medical standards in failing to diagnose acute abdomen in Mrs. Bruno? At this point perhaps a brief resume on Dr. Clements may be helpful. He is 74 years of age and has been practicing medicine since 1926. He has been a well respected surgeon and professor of anatomy in New Orleans for many years. Due to advancing age he has stopped all surgery and teaching, and now confines his present practice to general medicine. In the event a patient requires surgery or tests that he is unable to perform he has a procedure whereby he refers those patients to local specialists or hospitals. He has restricted his practice to the point where he only sees approximately 30 patients a day.
The problem in this case deals with the time lapse between Dr. Clements' examination and Mrs. Bruno's appendix rupture, the lack of procedures (diagnostic) utilized by Dr. Clements and the difficulty or ease of diagnosing appendicitis.
Dr. Clements examined Mrs. Bruno at approximately noon on June 15, 1971 and Mrs. Bruno was operated on at approximately noon on June 16, 1971 at which time her appendix had already ruptured. The expert medical testimony was almost unanimously in agreement about certain aspects of the diagnosis of appendicitis or acute surgical abdomen. First and foremost, all doctors agreed that the diagnosis can be very difficult and that even the best surgeons and diagnosticians can and have missed the diagnosis. Secondly, all doctors agreed that the diagnosis cannot be made without a finding of rigidity or rebound tenderness in the lower right quadrant of the abdomen following palpation. Thirdly, all doctors agreed that symptoms similar to those manifested by appendicitis are common signs in a myriad of other diseases. Fourthly, all doctors agreed that with the exception of rigidity or rebound tenderness in the lower right quadrant of the abdomen, there is no other symptom or combination of symptoms upon which to definitely diagnose appendicitis.
*564 The facts show that Dr. Clements found no rigidity or rebound tenderness in the lower right abdomen of Mrs. Bruno. This is corroborated by the fact that most of the doctors questioned stated that when the pain localizes in the lower right quadrant it becomes very intense to the individual. Mrs. Bruno testified that her pain was a ". . . stomach ache . . ." and hurt her in the area of the navel. One doctor gave the opinion that if Mrs. Bruno were suffering the onset of acute appendicitis when she was in Dr. Clements' office it would be most unlikely that she could have sat still waiting for two hours.
Most doctors agreed that the time period between the genesis of appendicitis and the subsequent rupture can vary greatly. It is for this reason that once a diagnosis of appendicitis is made most doctors prefer to operate as soon as possible. Mrs. Bruno entered Charity Hospital at approximately 7:00 P.M. on June 15, 1971 and after an examination the doctors there failed to make a definite diagnosis of appendicitis. Mrs. Bruno was operated on the following day for acute surgical abdomen, however, the operating surgeon testified that appendicitis was only one of the things they thought they might encounter during the operation. Basically, the operation on June 16, 1971 was exploratory surgery since no definite diagnosis had been made. Finally, the facts show that the operating surgeon found Mrs. Bruno's appendix in an unusual location and it was his opinion, corroborated by other doctors, that this location could have made the diagnosis more difficult.
The general duty of care owed by physicians to their patients is best expressed in the Supreme Court case of Meyer v. St. Paul-Mercury Indemnity Co., 225 La. 618, 73 So.2d 781 (S.Ct.1953):
"[1] A physician, surgeon or dentist, according to the jurisprudence of this court and of the Louisiana Courts of Appeal, is not required to exercise the highest degree of skill and care possible. As a general rule it is his duty to exercise the degree of skill ordinarily employed, under similar circumstances, by the members of his profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his best judgment, in the application of his skill to the case." (Citations omitted.)
As the record clearly indicates, Dr. Clements met this duty of care. A diagnosis of gastritis is not uncommon given symptoms revealing a stomach ache in the navel area. Some of the symptoms of appendicitis are also common to a number of other afflictions. Unless the classical textbook symptoms are found, it is frequently necessary to continue observation of the patient or be notified that the patient has a change in condition. This fact coupled with the fact that Mrs. Bruno failed to inform Dr. Clements of her worsened condition evidence to us no breach of duty.
Plaintiffs attempt to show negligence on Dr. Clement's part because he failed to take a white blood cell count and failed to do a rectal examination. While the medical testimony differed slightly it remains clear that these two procedures are of little import. A rise in the white blood cell count sometimes accompanies the onset of acute appendicitis. However, when Mrs. Bruno arrived at Charity Hospital and had this procedure done it resulted in a normal count. All doctors testified that a rectal examination is unreliable as a procedure to discover if appendicitis exists. It can only serve as a confirmatory symptom procedure. Most of the medical experts polled, including Dr. Clements, related that the rectal examination was a particularly unreliable procedure when used on women.
For the foregoing reasons the judgment of the trial court is affirmed. Plaintiffappellant is to pay all costs.
Affirmed.